IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID RAYMOND ANDREWS,<br><br>    Plaintiff,<br><br>  vs.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>    Defendant.<br>_____/ | CASE NO. CV F 11-1659 LJO DLB<br><br>**ORDER ON DEFENDANT'S MOTION FOR DISMISSAL**<br>(Doc. 25.) |

**INTRODUCTION**

Due to failure to invoke this Court's subject matter jurisdiction, defendant Federal Bureau of Investigation ("FBI") seeks dismissal of pro se plaintiff David Raymond Andrews' ("Mr. Andrews'") claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 ("section 552"). Mr. Andrews has filed no opposition papers, despite expired extensions and the passage of three months to do so. This Court considered the FBI's motion for dismissal on the record, pursuant to Local Rule 230(l). For the reasons discussed below, this Court DISMISSES this action.

**BACKGROUND**

**Summary**

In 2002, Mr. Andrews was convicted of second degree murder of Franklin Harper, Jr. ("Mr. Harper") and serves a 15 years to life sentence in a California prison. In 1979, Mr. Andrews had been

indicted on federal armed bank robbery charges. Mr. Andrews made FOIA requests seeking FBI records which he claims are "exculpatory and related to [his] wrongful state court conviction." The FBI produced 93 pages of records and claimed FOIA exemptions to preclude disclosure of other records. Mr. Andrews claims that the FBI wrongfully withholds records.

### Mr. Andrews' First FOIA Request

Mr. Andrews' March 3, 2011 letter requested from the FBI "complete disclosure of all documents and reports of investigation conducted by the FBI directed against me. I further request your records of all charges filed against me, arrests and convictions, both state and federal jurisdictions." The FBI's March 24, 2011 letter informed Mr. Andrews' of the need for his signature either notarized or under penalty of perjury and included the proper form. The FBI's letter directed Mr. Andrews to complete and return the form. On April 8, 2011, the FBI received Mr. Andrews' completed privacy waiver form signed under penalty of perjury.

The FBI received Mr. Andrews' April 4, 2011 letter which states that "there exists records which indicate that FBI Field Office agents contacted Galen Rudiaga, Madera County Deputy District Attorney, and Bonnie Bitter, Barker & Associates, regarding the subject of this matter. Ms. Bitter was, in 2002, appointed as my defense counsel in Madera Superior Court. I request all records, reports and indicia of those contacts and the topics of the communications."

The FBI processed Mr. Andrews' March 3, 2011 and April 4, 2011 letters as a first-party FOIA request and assigned a joint request number ("first FOIA request"). The FBI did not search for Mr. Andrews' criminal history or "rap sheet" in that a different procedure addresses a rap sheet request. The FBI's July 1, 2011 letter so informed Mr. Andrews.

The FBI's June 17, 2011 letter informed Mr. Andrews that a file responsive to his first FOIA request had been located and processed. The FBI released 60 pages in full or in part, pursuant to section 552 exemptions, regarding the bank robbery. The FBI identified a second potentially responsive record but was unable to locate it. The FBI advised that Mr. Andrews could appeal within 60 days by writing the Department of Justice Office of Information Policy ("OIP"). Mr. Andrews' June 24, 2011 letter appealed the FBI's response to his first FOIA request and claimed "that a search of the records system indices reflect that records responsive to my request exist. However, they were not provided because

they were not in their expected location." Mr. Andrews appealed only the search, not the withholdings.

OIP's September 26, 2011 letter affirmed the FBI's actions, determined that the FBI had conducted an adequate, reasonable search, and advised that Mr. Andrews could seek judicial review.

In February 2012, the FBI conducted a search and located 33 additional pages responsive to the first FOIA request. Thirty of those pages address the murder and were withheld in entirety under section 552 exemptions. The FBI released the remaining three pages with redactions.

In sum, in response to the first FOIA request, the FBI processed 93 pages, released 21 pages in full and 42 pages in part but withheld 30 pages in full.

## Mr. Andrews' Second FOIA Request

Mr. Andrews' June 9, 2011 letter sought from the FBI access to records on Patsy Mayberry ("Ms. Mayberry") and Adolph Spears, Sr. ("Mr. Spears") and "all documents and reports pertaining to any investigations conducted by the FBI, or any other law enforcement agency of the federal government, as directed against the subjects and in any way related to drug smuggling or sales, from 1975 through 1999." Mr. Andrews' June 9, 2011 letter also sought "records of visits between subjects [Ms. Mayberry and Mr. Spears] while Adolph was confined at McNeil Island."

The FBI's July 1, 2011 letter acknowledged receipt of Mr. Andrews' June 9, 2011 letter and assigned it a FOIA request number ("second FOIA request"). The FBI's July 1, 2011 letter advised that third-party records generally cannot be released without express consent of the third party, proof that the request's subject is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of requested records. The FBI's July 1, 2011 letter advised Mr. Andrews of his right to appeal to OIP within 60 days.

Mr. Andrews' July 11, 2011 letter responded with a request for "all public documents such as court records and news clippings" related to Mr. Spears. The FBI notes that Mr. Andrews' July 11, 2011 letter did not demonstrate Mr. Spears' "significant public notoriety." The FBI's July 21, 2011 letter informed Mr. Andrews that a requester must provide documentation of a subject's public notoriety for public source information to be processed and that section 552 exempts such records from disclosure in the absence of such documentation. The FBI's July 21, 2011 letter further advised Mr. Andrews of

his right to appeal to OIP within 60 days.

Mr. Andrews' July 15, 2011 letter to OIP appealed the FBI's response to the second FOIA request, sought reversal of prison visitation records only but did not mention records of investigations on Mr. Spears or Ms. Mayberry or newspaper or other records in the public domain. Mr. Andrews' July 15, 2011 letter asserted that Mr. Spears is deceased but lacked supporting documentation. OIP's September 26, 2011 letter affirmed on partly modified grounds the FBI's action and determined that the FBI properly asserted a section 552 exemption. OIP's September 26, 2011 letter determined that the FBI was not required to search for requested documents in that without consent, proof of death, official acknowledgment of an investigation, or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably constitute an unwarranted invasion of privacy.

The FBI contends that all withheld material is exempt from disclosure under FOIA or is non-responsive.

### **Mr. Andrews' Claims**

Mr. Andrews proceeds on his First Amended Complaint ("FAC") to claim that he seeks evidence of a connection between Ms. Mayberry, the wife of murder victim Mr. Harper, and Mr. Spears, whom the FAC asserts is a deceased drug trafficker. The FAC alleges that when Mr. Harper "struck an agreement with the FBI," Mr. Spears, Ms. Mayberry and Mr. Spears' children, Denise Mayberry and John Spears, killed Mr. Harper. The FAC alleges that the FBI wrongfully applies section 552 exemptions to withhold documents.

The FAC seeks:

1. "All relevant information and records and content of contact between the FBI and the Madera County District Attorney's Office" related to Mr. Andrews, Mr. Harper, Mr. Spears, Ms. Mayberry, Denise Mayberry and John Spears;

2. The "transcribed record" of Mr. Harper's deposition testimony in connection with the criminal action against Mr. Spears for drug trafficking in U.S. District Court, District of Oregon ("Spears criminal action");

3. "All charging documents (complaints, informations or indictments) filed against Adolph Spears, Sr. from 1998 through 2001)";

4. "A complete copy of the trafficking case docket report";

5. "A complete copy of the trafficking case 'trial witness index'";

6. "All related newspaper clippings and/or articles contained in the Bureau's files or within the Bureau's knowledge"; and

7. "Complete disclosure or all records of contact between Patsy Mayberry (including Patsy children) and Adolph Spears, Sr."

The FAC also seeks $10,000 damages.

## DISCUSSION

### FOIA Standards

The FBI faults Mr. Andrews' failure to exhaust administratively withholding of records, except those as to contact with the Madera County District Attorney's Office and prison visits, which the FBI contends are withheld legitimately.

### *Subject Matter Jurisdiction And Exhaustion*

FOIA confers jurisdiction on the district courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." 28 U.S.C. § 552(a)(4)(B). Under this provision, "federal jurisdiction is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'" *Kissinger v. Reporters Committee for Freedom of Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 968 (1980). "Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." *U.S. Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 142, 109 S.Ct. 2841 (1989).

"Exhaustion of administrative remedies is a general prerequisite to judicial review of any administrative action. We conclude that the FOIA should be read to require that a party must present proof of exhaustion of administrative remedies prior to seeking judicial review." *Voinche v. U.S. Dept. of Air Force*, 983 F.2d 667, 669 (5th Cir.1993). "Where no attempt to comply fully with agency procedures has been made, the courts will assert their lack of jurisdiction under the exhaustion doctrine." *In re Steele*, 799 F.2d 461, 466 (9th Cir. 1986).

### *Summary Judgment*

"Generally, FOIA cases should be handled on motions for summary judgment." *Miscavige v.*

*IRS*, 2 F.3d 366, 369 (11th Cir.1993). " Unlike the typical summary judgment analysis, in a FOIA case, we do not ask whether there is a genuine issue of material fact, because the facts are rarely in dispute." *Minier v. Central Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996). A district court needs "an adequate factual basis upon which to base its decision." *Minier*, 88 F.3d at 800.

"[C]ourts will simply no longer accept conclusory and generalized allegations of exemptions . . . but will require a relatively detailed analysis in manageable segments. An analysis sufficiently detailed would not have to contain factual descriptions that if made public would compromise the secret nature of the information, but could ordinarily be composed without excessive reference to the actual language of the document." *Vaughn v. Rosen*, 484 F.2d 820, 826-827 (D.C. Cir. 1973).

As such, the FBI notes that it shows it is entitled to judgment as a matter of law by filing adequately-detailed affidavits.

### *Search Parameters*

"[T]o prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dept. of Justice*, 19 F.3d 807, 812 (2nd Cir. 1994). "The agency must: demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir.1985). "In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Zemansky*, 767 F.2d at 571. "[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

"[A]ffidavits describing agency search procedures are sufficient for purposes of summary judgment only if they are relatively detailed in their description of the files searched and the search procedures, and if they are nonconclusory and not impugned by evidence of bad faith." *Zemansky*, 767 F.2d at 573. "[I]f an agency demonstrates that it has conducted a reasonably thorough search, the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith." *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993). An agency's affidavit is "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence

and discoverability of other documents.'" *Safecard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C.Cir.1981)).

The "issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Zemansky*, 767 F.2d at 571.

### *Withholding Exemptions*

Section 552(d) delineates nine exemptions of categories of records which need not be disclosed. "When a request is made, an agency may withhold a document, or portions thereof, only if the information contained in the document falls within one of nine statutory exemptions to the disclosure requirement contained in § 552(b)." *Church of Scientology of California v. U.S. Dept. of Army*, 611 F.2d 738, 742 (9th Cir. 1979).

"The burden is placed upon the government agency to establish that a given document is exempt from disclosure." *Church of Scientology*, 611 F.2d at 742. "To meet its burden, the agency must offer oral testimony or affidavits that are 'detailed enough for the district court to make a de novo assessment of the government's claim of exemption.'" *Maricopa Audubon Soc. v. U.S. Forest Service*, 108 F.3d 1089, 1092 (9th Cir. 1997) (quoting *Doyle v. FBI*, 722 F.2d 554, 555-56 (9th Cir.1983)). Agency "affidavits must describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of [agency] bad faith." *Hunt v. C.I.A.*, 981 F.2d 1116, 1119 (9th Cir. 1992).

In appropriate cases, an agency meets its burden by "identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." *Wiener v. F.B.I.*, 943 F.2d 972, 978 (9th Cir. 1991). Courts accord "substantial weight" to the agency affidavits. *Hunt*, 981 F.2d at 1119. Affidavits submitted by an agency are "accorded a presumption of good faith." *Safecard Servs.*, 926 F.2d at 1200.

### *Categorical Exemption And Segregability*

The FBI notes that an exception to document-by-document style of proof is exemption "as a

7

categorical matter." When "circumstances characteristically support an inference of confidentiality," an agency "similarly should be able to claim exemption" for a category of records "without detailing" the circumstances or characteristics of the particular record. *U.S. Dept. of Justice v. Landano*, 508 U.S. 165, 177, 113 S.Ct. 2014 (1993).

Section 552(b) addresses segregability of exempt and non-exempt portions of records: "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." "If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions." *Holt v. U.S. Dept. of Justice*, 734 F.Supp.2d 28, 48 (D. D.C.2010). A "court may decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead Data Central, Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 261, n. 55 (D.C. Cir. 1977).

With this standards in mind, this Court turns to the FBI's challenges to the FAC.

**Damages**

The FBI argues that the FAC's damages claims are subject to dismissal in absence of FOIA's waiver of sovereign immunity.

"A claim for damages against a federal agency is barred by sovereign immunity unless Congress has consented to suit." *Gilbert v. DaGrossa*, 756 F.2d 1455, 1460, n. 6 (9th Cir. 1985). "The question whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction." *McCarthy v. U.S.*, 850 F.2d 558, 560 (1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312 (1989).

Section 552(a)(4)(B) authorizes a court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld" but does not authorize an award of damages. FOIA "is a comprehensive scheme that provides for injunctive relief only, not tort liability or damages." *Johnson v. City of Shorewood, Minnesota*, 360 F.3d 810, 816 (8th Cir. 2004). "Plaintiffs are not entitled to monetary damages for violations of FOIA because 5 U.S.C. § 552(a)(4)(B) authorizes only injunctive relief." *Cornucopia Institute v. U.S. Dept. of Agriculture*, 560 F.3d 673, 675, n. 1 (7th

Cir. 2009).

FOIA fails to invoke this Court's jurisdiction to award damages to warrant dismissal of the FAC's damages claims.

**<u>Requested Records Beyond Administrative Exhaustion</u>**

The FBI contends that Mr. Andrews failed to exhaust administrative remedies as to most of the categories of records which the FAC seeks.

"Exhaustion of administrative remedies is a general prerequisite to judicial review of any administrative action. We conclude that the FOIA should be read to require that a party must present proof of exhaustion of administrative remedies prior to seeking judicial review." *Voinche*, 983 F.2d at 669.

The FAC seeks records of "contact between the FBI and the Madera County District Attorney's Office" related to Mr. Andrews, Mr. Harper, Mr. Spears, Ms. Mayberry, Denise Mayberry and John Spears. The FBI notes that Mr. Andrews failed to exhaust as to records regarding Mr. Spears, Ms. Mayberry, Denise Mayberry and John Spears in that Mr. Andrews' April 4, 2011 letter does not mention them.

The FAC seeks "[a]ll charging documents (complaints, informations or indictments) filed against Adolph Spears, Sr. from 1998 through 2001)," "the trafficking case docket report" and "trial witness index" as to the Spears criminal action, and "[a]ll related newspaper clippings and/or articles contained in the Bureau's files or within the Bureau's knowledge." The second FOIA request sought "all documents and reports pertaining to any investigations conducted by the FBI, or any other law enforcement agency of the federal government, as directed against the subjects [Ms. Mayberry and Mr. Spears] and in any way related to drug smuggling or sales, from 1975 through 1999." Mr. Andrews' July 15, 2011 appeal letter to OIP addressed only prison visitation records, not records of investigations on Mr. Spears or Ms. Mayberry or newspaper or other records. The FBI notes that Mr. Andrews failed to exhaust administrative remedies as to the Spears criminal action and charging documents against Mr. Spears.

The FAC further seeks "all records of contact between Patsy Mayberry (including Patsy children) and Adolph Spears, Sr." The FBI notes Mr. Andrews' appeal of the second FOIA request was limited

to prison visitation records to render the FAC's request for "all records" beyond administrative exhaustion.

There is no record that Mr. Andrews exhausted administrative remedies as to records of contact between the FBI and Madera County District Attorney's Office, investigations on Mr. Spears or Ms. Mayberry, charging documents against Mr. Spears, Spears criminal action documents, and newspaper or related records. FAC claims related to such documents are subject to dismissal in the absence of exhausted administrative remedies.

**Records Of District Attorney Contacts As To Mr. Harper's Murder**

The FAC seeks records of contact between the FBI and Madera District Attorney's Office regarding Mr. Harper, Mr. Andrews' murder victim. The FBI details its search for such records. David Hardy ("Mr. Hardy") is the FBI's Section Chief of the Record/Information Dissemination Section and states in his declaration that "there exists no records of contact between the FBI and the Madera County Deputy District Attorney in connection with the plaintiff's murder case." The FBI concludes that it properly completed it FOIA obligations and located no responsive documents.

The record suggests nothing to challenge the FBI's satisfaction of FOIA requirements as to records of contact between the FBI and Madera District Attorney's Office regarding Mr. Harper. FAC claims regarding such documents are subject to dismissal.

**Mr. Harper's Deposition Testimony**

The FAC seeks the "transcribed record" of Mr. Harper's deposition testimony in connection with the Spears criminal action. The FBI details is search for such record, notes it found nothing responsive and thus concludes that it satisfied its FOIA obligations.

The record suggests nothing to challenge the FBI's satisfaction of FOIA requirements as to the "transcribed record" of Mr. Harper's deposition testimony. FAC claims regarding the "transcribed record" are subject to dismissal.

**Prison Visit Records**

The FAC seeks "records of contact between Patsy Mayberry (including Patsy children) and Adolph Spears, Sr." The FBI characterizes the FAC to seek chiefly records as to Ms. Patsy's visits of Mr. Spears during Mr. Spears' imprisonment and contends that privacy protections exempt their

disclosure. In particular, the FBI argues that sections 552(b)(6) and 552(b)(7)(C) exemptions apply.

Section 552(b)(6) exempts from disclosure "personnel and medical files and **similar files** the disclosure of which constitute clearly unwarranted invasion of personal privacy." (Bold added.) Section 552(b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."

The FBI notes that "when certain circumstances characteristically support an inference of confidentiality, the Government similarly should be able to claim exemption" for a category of records "without detailing" the characteristics of a particular record. *U.S. Dept. of Justice v. Landano*, 508 U.S. 165, 177, 113 S.Ct. 2014 (1993). The FBI points to the U.S. Supreme Court's holding "as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no 'official information' about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is 'unwarranted.'" *U.S. Dept. of Justice v. Reporters Committee For Freedom of Press*, 489 U.S. 749, 780, 109 S.Ct. 1468 (1989).

In *U. S. Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602, 102 S.Ct. 1957 (1982), the U.S. Supreme Court interpreted the section 552(b)(6) exemption broadly:

> In sum, we do not think that Congress meant to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information. Rather, "[t]he exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual." H.R.Rep.No.1497, supra, at 11, U.S.Code Cong. & Admin.News 1966, p. 2428. When disclosure of information which applies to a particular individual is sought from Government records, courts must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy.

Section 552(b)(6) requires a determination whether "disclosure would compromise a substantial, as opposed to a de minimis, privacy interest." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C.Cir.1989). Section 552(b)(7)(C) requires a court to "balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." *U.S. Dep't of Justice v. Reporters Comm.*, 489 U.S. 749, 776, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). "The first question to ask in determining whether Exemption 7(C) applies is whether there is any privacy interest

in the information sought." *Associated Press v. U.S. Dept. of Defense*, 554 F.3d 274, 285 (2nd Cir. 2009).

The FBI notes that the "relevant privacy interest" is the "private citizen's right to be secure in his personal affairs which have no bearing or effect on the general public." *U.S. Dept. of Justice v. Reporters Committee For Freedom of Press*, 489 U.S. 749, 766, 109 S.Ct. 1468 (1989). The FBI points out that a private citizen's family life and family contacts are personal and that Mr. Andrews seeks related records "compiled for FBI law enforcement." The "mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Branch v. FBI*, 658 F.Supp. 204, 209 (D. D.C. 1987). "Law enforcement documents obtained by Government investigators often contain information about persons interviewed as witnesses or initial suspects but whose link to the official inquiry may be the result of mere happenstance. There is special reason, therefore, to give protection to this intimate personal data, to which the public does not have a general right of access in the ordinary course." *National Archives and Records Admin. v. Favish*, 541 U.S. 157, 166, 124 S.Ct. 1570 (2004). The FBI concludes that disclosure of family affairs in law enforcement records "can cause unwarranted speculation and inference stigmatizing the individuals involved."

The FBI further faults the FAC's attempt to obtain records more than 30 years old which have "practical obscurity" which is "basic" to the privacy protections of the sections 552(b)(6) and 552(b)(7)(C) exemptions. The FBI further questions the connection between prison visits in the 1970s and Mr. Spears' 2001 drug conviction given that any news coverage of the conviction occurred decades after the prison visits. The FBI challenges Mr. Andrews contention that Mr. Spears died and thus lacks a privacy interest subject to protection. The FBI produces Bureau of Prisons data that Mr. Spears remains alive.

The FBI continues that Mr. Andrews fails to demonstrate that public interest in requested records outweighs Ms. Mayberry's and Mr. Spears' privacy interests. The FBI notes that since it has shown that a privacy interest exists, this Court "must balance the privacy interest in nondisclosure against any public interest in disclosure" and that such public interest is limited to "information that sheds light on an agency's performance of its statutory duties." *See U.S. Dept. of Justice v. Reporters Committee For Freedom of Press*, 489 U.S. 749, 773, 109 S.Ct. 1468 (1989). Such public interest "is not fostered by

disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Reporters Committee For Freedom of Press*, 489 U.S. 749, 773, 109 S.Ct. 1468.  As such, the FBI holds Mr. Andrews to demonstrate "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and that the information is likely to advance that interest." *National Archives and Records Admin. v. Favish*, 541 U.S. 157, 158, 124 S.Ct. 1570 (2004).

Mr. Andrews claims to seek FBI records that are "exculpatory and related to [his] wrongful state court conviction."  However, a requester's "personal stake in using the requested records to attack his convictions does not count in the calculation of the public interest." *Oguaju v. U.S.*, 288 F.3d 448, 450 (D.C. Cir. 2002); *see Nishnic v. United States Dep't of Justice*, 671 F.Supp. 776, 791 (D. D.C. 1987) (plaintiff's interest in Brady material is a "decidedly private interest").  The FBI is correct that "there is no reason to suppose that the public has a right to information on who enters a federal building."  The FBI is further correct that prisoner visit information sheds no "light on an agency's performance of its duties" and is solely "information about private citizens."  This Court agrees with the FBI's assertion of the sections 552(b)(6) and 552(b)(7)(C) exemptions to withhold prisoner visit records.

### Absence Of Bad Faith

The FBI points to the absence of its bad faith to respond to Mr. Andrews' FOIA requests and to divide his requests into two based on differing requested subject matter and timing of Mr. Andrews' requests.  The FBI characterizes as "meritless" Mr. Andrews' accusations of FBI bad faith.

"Agency affidavits enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents." *Ground Saucer Watch, Inc. v. C.I.A.*, 692 F.2d 770, 771 (D.C. Cir.1981).  Moreover, "subsequent disclosure of documents initially withheld does not qualify as evidence of bad faith." *Defenders of Wildlife v. U.S. Dept. of Agriculture*, 311 F.Supp.2d 44, 56 (D. D.C. 2004); *Maynard v. C.I.A.*, 986 F.2d 547, 565 (1st Cir. 1993) ("Rather than bad faith, we think the forthright disclosure by the INS that it had located the misplaced file suggests good faith on the part of the agency"); *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) ("circumstances surrounding this delay indicate neither artifice nor subterfuge but rather, at worse, administrative inefficiency").

The record reveals no FBI bad faith to respond to Mr. Andrews' first and second FOIA requests, especially considering the breath of requested information over unlimited time periods. Nothing suggests that the FBI improperly withheld records or conducted a questionable search.

### Third Party Health Or Safety

The FBI faults the FAC's reliance on 5 U.S.C. § 552a(t)(1) which provides: "No agency shall rely on any exemption contained in section 552 of this title to withhold from an individual any record which is otherwise accessible to such individual under the provisions of this section." The FBI further faults the FAC's reference to 5 U.S.C. § 552a(b)(8) ("section 552a(b)(8)") to attempt to avoid FOIA exemptions. Section 552a(b)(8) provides:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be--
>
> . . .
>
> (8) to a person pursuant to a showing of compelling circumstances affecting the health or safety of an individual if upon such disclosure notification is transmitted to the last known address of such individual . . .

The FBI notes that section 552a(b)(8) applies to the health or safety of a third party, "not the evidentiary wants of the requesting plaintiff." The FBI is correct, and the FAC's reliance on 5 U.S.C. §§ 552(a)(t)(1) and 552a(b)(8) is unavailing.

### CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES with prejudice with action and GRANTS judgment in the FBI's favor; and
2. DIRECTS the clerk to enter judgment in favor of defendant FBI and against plaintiff David Raymond Andrews and to close this action.

IT IS SO ORDERED.

Dated:   **January 7, 2013**          /s/ **Lawrence J. O'Neill**
                                    UNITED STATES DISTRICT JUDGE

14